IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

EMMONIE BRANCH,

    Plaintiff,

v.

DR. NONA LOGAN, et al.,

    Defendants.

Case No. 3:12-0927
Senior Judge Haynes

## MEMORANDUM

Plaintiff, Emmonie Branch, filed this action under 42 U.S.C. § 1983 against several Defendants: Correct Care Solutions, Defendants Drs. Nona Setler-Logan and Laura Kastan. Plaintiff asserts claims for denial of medical treatment during his incarceration at the Criminal Justice Center ("CJC"). By earlier Order, the Defendant Correct Care Solutions was dismissed from this action. (Docket Entry No. 32)

Before the Court is Defendant Dr. Logan's and Defendant Kastan's motion for summary judgment (Docket Entry No. 42) to which Plaintiff responded (Docket Entry No. 48). In sum, Plaintiff concedes the dismissal of Defendant Kastan and his state medical malpractice claims. Thus, only Plaintiff's Section 1983 claim against Defendant Logan remains in this action

For the reasons set forth below, the Court concludes that there are not any material factual disputes and that Plaintiff received substantial medical care at the CJC. Plaintiff's complaints are about the quality of the medical care provided to him and are not actionable under Section 1983. Thus, the Court concludes that the Defendants' motions for summary judgment should be granted

and this action dismissed with prejudice.

## A. Findings of Fact[1]

Plaintiff asserts that while incarcerated at the CJC that he had "continuous internal bleeding" "in the form of blood saturated stools," pain in his hand resulting from a fight, and an injury in his foot resulting from a gun shot wound. (Docket Entry No. 1, Verified Complaint at 1-3). Plaintiff states that he was given a stool softener, but was not examined, and states that the problem was internal. Id. at 2. Plaintiff requested an x-ray for his injured hand, but states this request was immediately refused, and that he has not received further help or treatment. Id. at 1. Finally, Plaintiff asserts that he has not received any medical attention for his foot injury. Id. at 3.

According to Plaintiff's medical records, on May 8, 2012, Plaintiff received a medical intake screening at CJC. (Docket Entry No. 42-1, Exhibit 1 to McCraw Affidavit).[2] During this screening, Plaintiff cited prior surgery on the ring finger of his left hand. Id. at Exhibit 9. Prior to his screening, Plaintiff was taking Amoxicillin and Lortab. Id. The nurse examined Plaintiff's sutures, initiated wound care protocol and prescribed Doxycycline and Augmentin. Id. at Exhibit 3-4.

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Bartell v. Lohiser, 215 F.3d 550, 555 (6th Cir. 2000). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). The Court concludes that there are not any material factual disputes. Thus, this section constitutes finding of facts under Fed.R.Civ.P. 56.

[2]All medical records referenced herein are exhibits to the Affidavit of Jeremy McCraw, which is attached to Defendants' Motion for Summary Judgment. For the ease of reading, the records are referred to simply with their exhibit number.

Between May 12 and May 16, 2012, Plaintiff refused wound care treatment for his left hand ring finger. Id. at Collective Exhibit 8.

On May 10, 2012, Plaintiff submitted a sick call request due to pain in his foot resulting from a prior gun shot wound. Id. at Exhibit 5. This bullet had been in Plaintiff's foot since 2003, but was causing pain in the arch of his foot. Id. On May 12, the nurse examined Plaintiff. Id. Plaintiff denied any radiation of this pain or abnormal sensations. Id. at Exhibit 6. Plaintiff's feet were not swollen, nor bruised nor abnormal and a specific cause for Plaintiff's pain was not found. Id. at Exhibit 6. Plaintiff was prescribed Tylenol. Id. at Exhibit 7. Plaintiff refused Tylenol between May 17 and May 19, 2012. Id. at Exhibits 11, 12, 13.

On May 16, 2012, Plaintiff reported a history of gunshot wounds to the head and ear as well as anger-related blackouts and episodes of his jaw locking up. Id. at Exhibit 9. Plaintiff also reported a current history of Bells Palsy on his right side, but did not identify any other complaints. Id.

On May 20, 2012, Plaintiff complained of pain in his foot and requested special shoes with Nike shocks to absorb any impact to his arches. Id. at Exhibit 14. A nurse examined Plaintiff's feet, but did not observe any swelling, bruising or deformity. Id. Also on May 20, Plaintiff refused Tylenol, which he did again on May 22, 23 and 24. Id. at Exhibit 15, Collective Exhibit 16. On May 25, 2012, Plaintiff's request for special shoes was sent to a health care provider. Id. at Exhibit 18.

On May 28, 2012, Plaintiff submitted a sick call request complaining of blood in his stool and pain in his stomach. Id. at Exhibit 19. On May 31, 2012, after a physical examination, three stool cards were taken to evaluate Plaintiff's stools, and Plaintiff was prescribed the stool softener

Colace for 30 days. Id. at Collective Exhibit 20. On June 5, 2012 and June 8, 2012, Plaintiff refused to take the Colace. Id. at Collective Exhibit 21.

On June 11, 2012, after a fight with another inmate that caused an injury to his right hand, Plaintiff was evaluated with swelling to his right hand, but without any bruising. Id. at Exhibit 22. Plaintiff was given ice for his right hand and an ACE wrap bandage, as well as an order for a bottom bunk for thirty days. Id. at Exhibits 23-24. A follow up appointment was scheduled the next day. Id. at Exhibit 23.

On June 12, 2012, during the follow up evaluation, Plaintiff complained of the pain in his right hand, which was now swollen and bruised. Id. at Exhibit 25. Plaintiff's hand was wrapped and ice was applied. Id. Plaintiff received an appointment for a follow up with the nurse practitioner. Id. On June 13, Plaintiff refused the ACE wrap, and requested a gauze wrap instead. Id. at Exhibit 26.

On June 14, 2012, Plaintiff was evaluated again with complaints of the injured hand, foot pain from the gunshot wound and blood in his stool. Id. at Exhibit 26. Plaintiff requested an x-ray. Id. Plaintiff was examined, and the nurse practitioner prescribed Ibuprofen for fourteen days, ice to his right hand, elevation of his hand, rest and use of an ACE wrap for thirty days. Id. at Exhibit 26. Plaintiff's medical record reflects that a "MR" would be needed to evaluate the extent of the gunshot wound. Id. As to the blood in his stool, Plaintiff was prescribed Metamucil for 30 days. Id. On June 20, 2012, Plaintiff refused the Ibuprofen medication for his right hand. Id. at Exhibit 28. On June 25, 2012, Plaintiff again refused Motrin. Id. at Exhibit 30.

Plaintiff did not have any other complaints until his three sick call requests on August 13,

2012 when he complained of tooth pain, problems using the restroom while sitting, and requested cream for his feet, which he stated were peeling badly. Id. at Collective Exhibit 31. On August 14, 2012, Plaintiff was evaluated, and was advised that he could obtain lotions and anti-fungal creams from the commissary to treat his dry skin, his potential athlete's foot and his heels. Id. at Exhibit 32. Plaintiff was also encouraged to increase his fluid intake and activity level to assist with constipation. Id. A dental exam was scheduled and took place on August 16, 2012. Id. at Collective Exhibit 33.

Plaintiff was next evaluated on August 23, 2012, following a complaint of pain in his right hand for which he again requested an x-ray. Id. Plaintiff also complained of blood in his stool and right foot pain resulting from his prior gunshot wound. Id. Plaintiff again requested special shoes and stated that the medication previously given to him for his rectal bleeding did not resolve the issue. Id. A physician was notified of these issues and an appointment with the nurse practitioner was scheduled. Id. at Exhibit 34.

On August 30, 2012, Plaintiff was evaluated by a nurse practitioner, in response to ongoing complaints of rectal bleeding with intermittent constipation. Id. at Exhibit 35. Plaintiff was determined to have rectal bleeding and constipation, but was noted to be noncompliant with his diet. Id. at Exhibit 35. Plaintiff was prescribed Reguloid and Colace. Id. Plaintiff also requested evaluation of his right hand, and stated that movement remained painful. Id. Examination of Plaintiff's right hand revealed full range of motion in his right wrist, but was the hand was tender with flexion; Plaintiff also had decreased strength in making a fist. Id. The nurse practitioner noted that Plaintiff was not compliant in wearing the ACE wrap provided to him. Id. An x-ray of

Plaintiff's right hand was ordered to rule out a fracture. Id. at Collective Exhibit 36. Finally, Plaintiff again requested special shoes for the pain in his foot related to the gunshot wound. Id. At the time, Plaintiff was wearing croc style shoes. Id. His request for special shoes was denied. Id.

On August 31, 2012, Plaintiff underwent an x-ray of his right hand. Id. at Exhibit 37. The results of the x-ray did not reveal bony abnormality, but evinced a chronic fracture of the fifth metacarpal. Id. There were not any new orders entered after the x-ray. Between the time of his x-ray and the filing of this action on September 10, 2012, Plaintiff did not lodge any complaints about his right hand, foot, or rectal bleeding.

### B. Conclusions of Law

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in original).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity

for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989).

In considering a summary judgment motion, the required showing of the respective parties is described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to "'clearly and convincingly' demonstrate[] the absence of any genuine issues of material fact." Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex 477 U.S. at 323 and Fed.R.Civ.P. 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary

judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby 477 U.S. at 252). Moreover, as the Court of Appeals explained:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Id. at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) (("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby 477 U.S. at 251-52.)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."</u>

Liberty Lobby, 477 U.S. at 252 (citation omitted and emphasis added).

It is likewise true that:

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: "The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . ."

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "we must review the record, and any inferences derived therefrom, in the light most favorable to the party opposing the motion." Bartell v. Lohiser, 215 F.3d 550, 555 (6th Cir. 2000) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New International Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 494 U.S. 1091 (1990). In this district, the parties must provide specific references to the proof upon which they rely.

See Local Rule 56.01(c) requiring each party to provide a statement of undisputed facts to which the opposing party must respond.

In <u>Street</u>, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" of summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, <u>i.e.</u>, the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish

> that it is bereft of a genuine issue of material fact.
>
> 10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) whether the moving party has "clearly and convincingly" established the absence of material facts; (2) whether the plaintiff has presented sufficient facts to establish all the elements of the asserted claim or defense; (3) if factual support is presented by the nonmoving party, whether those facts are sufficiently plausible to support a jury verdict or judgment under the applicable law; and (4) whether there are any genuine issues with respect to those material facts under the governing law.

A pretrial detainee has a Fourteenth Amendment right to adequate medical care. City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244-46 (1983) and to refuse necessary medical care. Cruzan v. Missouri Dep't of Health, 497 U.S. 261 (1990). For denial of medical care or services, the Sixth Circuit applies the deliberate indifference standard under the Eighth Amendment Heflin v. Stewart County, Tenn., 958 F.2d 709, 717 (6th Cir.), reh'g granted on other grounds, 968 F.2d 1 (6th Cir. 1992).

"The Eighth Amendment's proscription of cruel and unusual punishment is violated by 'deliberate indifference to serious medical needs of prisoners.'" City of Revere, 463 U.S. at 243-44 (quoting Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). Under the Eighth Amendment, the

standard for deciding whether this right has been violated was stated as follows:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 104 (citation and footnotes omitted). These standards were explained further by the Supreme Court, which stated that the action must be characterized as "repugnant to the conscience of mankind." Id. at 105 (citations omitted).

Yet, this standard does not apply to every medical care dispute that a prisoner has with his jailer.

> This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain. . . .
>
> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

Id. at 105-06 (footnote omitted). Thus, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Westlake

12

v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Yet, "medical attention rendered may be so woefully inadequate as to amount to no treatment at all." Id. (citation omitted).

As it were with other Eighth Amendment claims, this claim likewise has objective and subjective components. In Helling v. McKinney, 509 U.S. 25, 35-36 (1993), the Supreme Court held that prisoners' exposure to environmental tobacco smoke stated an Eighth Amendment claim, satisfying both objective and subjective components. As to the objective component, i.e., a serious medical condition, the Court noted that there can be multiple instances in which prisoners would not be required to manifest symptoms of a disease before they would be entitled to protection from exposure such as communicable diseases, unsafe drinking water, hepatitis and venereal disease. Id. at 33. Other instances include exposure to exposed electrical wiring, deficient fire-fighting measures, and mingling of inmates with serious contagious diseases. Id. at 34.

The Court then explained the objective and subjective factors for this type of Eighth Amendment claim:

> Also with respect to the objective factor, determining whether McKinney's conditions of confinement violates the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.
>
> On remand, the subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct, which may have changed considerably since the judgment of the Court of Appeals. Indeed, the adoption of the smoking policy mentioned above will bear heavily on the inquiry into deliberate indifference. In this respect we note that at oral argument McKinney's counsel was of the view that depending on how the new policy was administered, it could be very

difficult to demonstrate that prison authorities are ignoring the possible dangers posed by ETS. The inquiry into this factor also would be an appropriate vehicle to consider arguments regarding to the realities of prison administration.

Id. at 36-37 (emphasis added).

Here, Plaintiff had objective manifestations of injury, including serious medical injuries. Yet, Plaintiff was provided with extensive medical care, medications and tests. In several instances, Plaintiff refused prescribed medical care and medications. Thus, the Court concludes that under the undisputed facts, Plaintiff cannot prove any deliberate indifference by the Defendants or their assistants to his medical concerns. Thus, the Defendant's motions for summary judgment should be granted and this action dismissed as to the remaining Defendants Logan and Kastan.

An appropriate Order is filed herewith.

ENTERED this the 2nd day of March, 2015.

WILLIAM J. HAYNES, JR
Senior United States District Judge